# EXHIBIT A

# NIXON PEABODY LLP
ATTORNEYS AT LAW

900 Elm Street, 14th Floor
Manchester, NH 03101-2031
(603) 628-4000
Fax: (603) 628-4040

W. Scott O'Connell
Direct Dial: (603) 628-4087
Direct Fax: (866) 947-1393
E-Mail: soconnell@nixonpeabody.com

April 26, 2013

**BY HAND DELIVERY**

Claire Mee, Superior Court Clerk
Vermont Superior Court
Washington Civil Division
65 State Street
Montpelier, VT 05602

RE: <u>Rock of Ages Corporation v. Houston Casualty Company</u>

Dear Clerk Mee:

Enclosed for entry with the Court in the matter referenced above, please find a *Complaint for Declaratory Relief, Breach of Contract, and Breach of the Implied Covenant of Good Faith and Fair Dealing*. Also enclosed is a check for the filing fee in the amount of $262.50.

If you have any questions, please call me at (603) 628-4087. Your assistance in this matter is greatly appreciated.

Very truly yours,

W. Scott O'Connell

WSO:cln

Enclosures

cc: John S. Stadler, Esq.
    Holly J. Kilibarda, Esq.

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. |

Rock of Ages Corporation, )
)
    Plaintiff, )
)
v. )
)
Houston Casualty Company, )
)
    Defendant. )

**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Plaintiff Rock of Ages Corporation ("ROAC"), by and through its attorneys, Nixon Peabody LLP, hereby complains and alleges against Defendant Houston Casualty Company ("Houston Casualty") as follows:

**Nature of the Action**

1. This is a civil action for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing against defendant Houston Casualty, brought as a result of its failure to satisfy its obligations under policies of insurance to indemnify and provide insurance to ROAC with respect to claims asserted by two dissenting shareholders, Lance Gad ("Gad") and Ethan Starr ("Starr") (collectively the "Dissenters' Claims"), in connection with the January 2011 merger of Swenson Granite Company, LLC ("Swenson Granite") and ROAC. The Dissenters' Claims have resulted in an action styled <u>Rock of Ages Corporation v. Ethan Starr and Lance Gad</u>, Vermont Superior Court, Washington Unit, Docket No. 182-3-11 Wncv (the

14398899.3

"Dissenters' Rights Action"). Because the Dissenters' Claims and the Dissenters' Rights Action fall within the coverage of insurance policies that Houston Casualty issued to ROAC, ROAC requested that Houston Casualty: (1) consent to and indemnify ROAC with respect to a settlement of the Dissenters' Rights Action in the amount of $183,665.45, and (2) indemnify ROAC for the attorney's fees and costs which ROAC has incurred in the amount of approximately $300,000 in connection with the Dissenters' Claims and the Dissenters' Rights Action. Houston Casualty has wrongfully refused to consent to the settlement and has wrongfully refused to indemnify ROAC for all of its losses, including attorneys' fees and costs, that ROAC has incurred or will incur with respect to settlement of the Dissenters' Claims and the Dissenters' Rights Action. By its actions as described herein, Houston Casualty breached its contractual obligations to ROAC and the covenant of good faith and fair dealing that is implied in the insurance policies issued by Houston Casualty to ROAC.

## Parties

2. Plaintiff ROAC is a Vermont corporation with its principal place of business in the Town of Barre, Washington County, Vermont.

3. Defendant Houston Casualty is a Texas domiciled property and casualty insurance company with a principal place of business in Houston, Texas.

4. This Court has personal jurisdiction over Houston Casualty pursuant to 12 V.S.A. § 913(b), because Houston Casualty transacted business within Vermont which gave rise to the claims asserted in this Complaint.

**Facts**

5. ROAC owns and operates granite quarries and manufacturing and sawing facilities, principally in Vermont, but also in other locations. ROAC sells granite blocks to various manufacturers, and manufactures and sells granite memorials wholesale to independent authorized retailers.

6. ROAC is the Named Corporation on Director, Officers and Corporate Liability Insurance Policies issued by Houston Casualty under No. 24-MG-09-A9954 for the period from November 15, 2009 to November 15, 2010 (the "2009-2010 Policy") and under No. 24-MG-10-A10435 for the period from November 15, 2010 to November 15, 2011 (the "2010-2011 Policy"), hereinafter referred to collectively as the "Policies."

*The Dissenters' Claims*

7. On May 6, 2010, ROAC's Board of Directors received a proposal from Swenson Granite Company, LLC to purchase all outstanding shares of ROAC for $4.38 per share (the "Proposal"). On that date, ROAC's Board of Directors formed a special committee of three independent directors (the "Special Committee") to evaluate the Proposal and ROAC's other strategic alternatives and to make recommendations to the Board of Directors.

8. The Special Committee met initially in May 2010 and through October 18, 2010, the date of the approval of an Agreement and Plan of Merger (the "Merger") by ROAC's Board of Directors. During this period, with the assistance of counsel and a financial adviser, Covington Associates, LLC ("Covington"), the Special Committee considered the Proposal and explored alternatives to it. Among other duties, Covington was retained to conduct due diligence and to provide an opinion on the fairness of the Proposal or any alternative transaction to the shareholders of ROAC from a financial point of view.

9. Prior to the Board meeting in October of 2010, Covington and the Special Committee also reviewed alternative valuation information that was purportedly produced by an unidentified analyst and that had been forwarded to the Special Committee by a law firm representing an individual ROAC shareholder who in May of 2010 had filed a legal action against ROAC on behalf of himself and all other public shareholders of ROAC (the "Semon lawsuit") claiming that the per-share price offered in the original Proposal was inadequate.

10. Prior to October 18, 2010, the Special Committee also continued to engage in negotiations with Swenson Granite over the Proposal, with each party represented by separate counsel. The negotiations eventually resulted in an increase in the offered per-share buyout price from $4.38 to $5.25 (the "Revised Proposal"). The Revised Proposal of $5.25 per share was nearly 20 percent more than the Proposal.

14. On October 15, 2010, the Special Committee met and unanimously determined that the Merger, with the per-share buyout price of $5.25, was fair to and in the best interests of ROAC's shareholders, and unanimously recommended the Revised Proposal to the Board of Directors.

15. On October 15, 2010, based upon the Special Committee's recommendation and upon its own review of Covington's Fairness Opinion, ROAC's Board of Directors also met and determined that per-share buyout price of $5.25, was fair to and in the best interests of ROAC's shareholders and unanimously approved it.

16. On October 18, 2010, after approving the Revised Proposal, the ROAC Board of Directors entered into an Agreement and Plan of Merger (the "Merger Agreement") with Swenson Granite, subject to shareholder approval, whereby shareholders of ROAC would

receive $5.25 per share in cash and Swenson Granite, via its subsidiary Granite Acquisitions, would acquire 100 percent ownership of ROAC.

19. On December 16, 2010, after the filing of two revised preliminary proxy statements on December 1, 2010 and December 9, 2010, ROAC filed a definitive proxy statement (the "Proxy Statement") with the SEC, describing the process by which the Special Committee and ROAC's Board of Directors concluded that the Revised Proposal was in the best interests of ROAC's shareholders. A fairness opinion was attached to the Proxy Statement, and thus both the Proxy Statement and the fairness opinion were a matter of public record and available to all ROAC shareholders. The SEC had no comments on the Proxy Statement.

20. On December 17, 2010, the Proxy Statement was mailed to all shareholders of ROAC.

21. The Proxy Statement disclosed that a shareholder vote would be held on the proposed Merger on January 18, 2011. In addition, and pursuant to § 13.20 of the Vermont Business Corporation Act (the "Act"), the notice of the special meeting contained in the Proxy Statement stated that shareholders were entitled to assert dissenters' rights under § 13.02 of the Act.

22. On January 6, 2011, Gad gave ROAC written notice of his intent to dissent from the Merger and to demand payment for his shares, as required by § 13.21 of the Act.

23. On January 7, 2011, Starr (for himself and his IRA) gave ROAC written notice of his intent to dissent from the Merger and to demand payment for his shares, as required by § 13.21 of the Act.

24. On January 18, 2011, the ROAC shareholders voted to approve the Merger. Of the disinterested Class A shares that were voted, eighty-six (86) percent were voted in favor of

the Merger. Both Starr and Gad voted against the Merger. The Dissenters together owned 4.5 percent of the Class A common stock as of the date of vote.

25. On January 20, 2011, as required by § 13.22 of the Act, ROAC sent written notice to Gad and Starr stating that they were required to make a demand for payment of their shares on or before February 23, 2011 and supplying them with a form by which to demand payment.

26. On January 27, 2011, Gad made written demand for payment.

27. By letter dated February 3, 2011, ROAC made payment to Gad in the amount of $384,179.25, representing $5.25 per share, plus accrued interest of $776.39 from January 18, 2011 to February 3, 2011, as required by § 13.25 of the Act.

28. On or about February 7, 2011, pursuant to § 13.28 of the Act, Gad sent ROAC a handwritten letter in which he contested ROAC's estimate of the fair value of the ROAC Class A Common stock that he held, stated that his estimate of the fair value of ROAC was $7.75 per share, and demanded payment based on his estimate.

29. On February 10, 2011, Starr made a written demand for payment (for himself and for his IRA).

30. By letter dated February 11, 2011, ROAC made payment to Starr for the shares he held directly in the amount of $609,000, representing $5.25 per share, plus accrued interest of $1,713.84 from January 18, 2011 to February 11, 2011, as required by § 13.25 of the Act.

31. By letter dated February 11, 2011, ROAC also made payment to Starr for shares held in the Roth IRA in the amount of $141,225, representing $5.25 per share, plus accrued interest of $397.44 from January 18, 2011 to February 11, 2011, as required by § 13.25 of the Act.

32.     Each of the ROAC letters providing payment stated that ROAC had estimated the fair value (as that term is defined in the Act) of the Class A Common Stock to be $5.25 as of October 18, 2010 (the date of the first announcement to the shareholders of the terms of the proposed Merger) and explained the basis of ROAC's estimate.

33.     On or about March 9, 2011, pursuant to § 13.28 of the Act, Starr sent ROAC a letter in which he contested ROAC's estimate of the fair value of the Class A Common stock that he owned individually and as part of a Roth IRA, stated that his estimate of the fair value of ROAC was $13.27 per share, and demanded payment based on his estimate. .

34.     On March 28, 2011, pursuant to § 13.30 of the Act, ROAC commenced the Dissenters' Rights Action, as ROAC was statutorily required to do when the demands for payment by Gad and Starr remained unsettled. In the Dissenters' Rights Action, ROAC requested a judicial determination of the fair value of ROAC's Class A Common stock held by Gad and Starr.

*The Houston Casualty Insurance Policies*

35.     The Insuring Agreement of the Policies provides in part that Houston Casualty

> "will pay to or on behalf of **[ROAC]** Loss arising from:...(2) **Securities Claims** first made during the **Policy Period** or the Discovery Period (if applicable) against **[ROAC]** for **Wrongful Acts**."

36.     Under the Policies, "**Loss**" is defined in part as

> **Defense Costs** and any damages, settlements, judgments or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that:...(2) **[ROAC]** is legally obligated to pay as a result of any Securities Claim;...."

37. Under the Policies, "**Securities Claim**" is defined in part as "a **Claim** which: (1) is brought by or on behalf of one or more securities holders of [ROAC] in their capacity as such,...."

38. Under the Policies, "**Claim**" is defined in part as "(1) any written demand for monetary or non-monetary relief,...."

39. Under the Policies, "**Wrongful Act**" is defined in part as "any: (1) actual or alleged act, error, misstatement, misleading statement, omission or breach of duty:....(b) with respect only to **Securities Claims**, by the Company;...."

40. Under the Policies, "**Defense Costs**" are defined in part as "reasonable fees, costs and expenses consented to by [Houston Casualty]...resulting from the investigation, adjustment, defense or appeal of a **Claim** against an **Insured Person** (or, with respect to **Securities Claims**, against any **Insured**),...."

41. The Dissenters' Claims and the Dissenters' Rights Action, including the claims concerning ROAC's valuation of ROAC's common stock in connection with the Merger, constitute a "Securities Claim" against ROAC, the "Company" under the Policies, for a "Wrongful Act" for which ROAC is entitled under the Policies to payment by Houston Casualty for "Loss," including "Defense Costs."

42. By letter dated March 13, 2013, ROAC requested that Houston Casualty provide its written consent to a settlement by ROAC of the Dissenters' Claims and the Dissenters' Rights Action in the total amount of $183,665.45 and agree to reimburse ROAC for ROAC's attorney's fees and costs in the amount of approximately $300,000 incurred in connection with the Dissenters' Claims and the Dissenters' Rights Action.

43. By letter dated March 15, 2013, Houston Casualty responded to ROAC's request for coverage by asserting that the 2009-2010 Policy does not appear to provide coverage for any loss, including legal fees and expenses, incurred in connection with the Dissenters' Claims and the Dissenters' Rights Action. Specifically, Houston Casualty asserted that the Dissenters' Claims and the Dissenters' Rights Action do not constitute a "Securities Claim" against ROAC for a "Wrongful Act" within the meaning of the 2009-2010 Houston Casualty Policy, because "the rights afforded under the Act are available to shareholders in the event of a merger without reference to any alleged wrongdoing or fault" and that "[i]n the absence of any alleged Wrongful Acts, there is no basis for coverage under the Policy for any loss, including legal fees and expenses, incurred by [ROAC] in this matter."

44. Houston Casualty further asserted in its letter dated March 15, 2013 that the amounts demanded by the Dissenters, and for which ROAC sought coverage under the Policy, do not constitute "Loss" under the Policy, because the Dissenters are claiming "that they received inadequate consideration for their shares in the merger and, thus, seek increased consideration for their redemption of such shares."

45. By letter dated March 20, 2013, ROAC informed Houston Casualty that Houston Casualty's denial of coverage for the Dissenters' Claims and the Dissenters' Rights Action on the ground that such claims did not involve allegations of wrongdoing or fault was without factual and legal basis. First, the Policy's definition of "Wrongful Act" does not refer to "wrongdoing or fault" as a predicate for coverage. Second, ROAC informed Houston Casualty that the Dissenters alleged that ROAC's valuation of their shares at $5.25 per share in connection with the Merger did not reflect the fair value of the shares and that such allegation "plainly constitutes an alleged act, error, misstatement, misleading statement, omission or breach of duty

by ROAC with respect to a Securities Claim." ROAC also informed Houston Casualty, by referencing a letter to Houston Casualty dated August 9, 2012, that the amount to be paid by ROAC to resolve the Dissenters' Claims and the Dissenters' Rights Action is a "settlement" that constitutes a "Loss" as defined under the Policy and, thus, Houston Casualty was obligated to provide coverage and indemnify ROAC under the Policy for that settlement amount and for the attorneys' fees and costs incurred by ROAC in defending the Dissenters' Claims and the Dissenters' Rights Action.

46. By letter dated April 17, 2013, Houston Casualty repeated the arguments that it had made in the previous letter referenced in paragraph 47 above and denied any obligation to provide coverage to ROAC under the 2009-2010 Policy with respect to the settlement of the Dissenters' Rights Action. Houston Casualty asserted that the Dissenters were not alleging any wrongdoing or fault by ROAC but merely "*exercising a right* accorded to them under Vermont's appraisal statute."

47. In denying coverage to ROAC with respect to the settlement of the Dissenters' Claims and the Dissenters' Rights Action, Houston Casualty ignores the express terms and the conditions of the Policies, which do not limit or restrict coverage solely to claims asserting wrongdoing or fault by ROAC.

48. The Policies provide that Houston Casualty will indemnify ROAC for any liability that is imposed on ROAC for its "acts" in connection with "Securities Claims." The Policies do not limit coverage to situations where ROAC is alleged to have acted in a negligent or wrongful manner or to have been at fault in some regard. Under Chapter 13 of the Act, ROAC may be subject to liability with respect to the Dissenters' written demands for monetary relief, which demands resulted from ROAC's valuation of its Class A Common Stock with

respect to the Merger, and such statutory liability may be imposed on ROAC without regard to alleged fault or wrongdoing by ROAC. Such statutory liability is clearly in connection with "Securities Claims" and is atype of liability for which ROAC purchased insurance from Houston.

49. With respect to the Policies, ROAC has paid the required premiums in full and has satisfied all other conditions to coverage, or is otherwise excused from doing so. All actions taken by ROAC with respect to the Dissenters' Claims and the Dissenters' Rights Action have been reasonable, and no action has prejudiced Houston Casualty .

50. ROAC provided notice to Houston Casualty of the Semon lawsuit and sought to obtain insurance coverage under the Policies for that lawsuit. The Semon lawsuit, the Dissenters' Claims and the Dissenters' Rights Action arise out of, are based upon, or are attributable to the same facts, circumstances, situations, transactions or events in connection with the Merger.

51. In December 2012, Houston Casualty and ROAC, among others, entered into a settlement agreement with respect to ROAC's claims for insurance coverage under the 2009-2010 Policy in connection with the Semon lawsuit.

## COUNT I
### (For Declaratory Relief as to Duty to Indemnify)

52. ROAC repeats and incorporates by reference the allegations of paragraphs 1 thorugh 51 above.

53. Pursuant to the terms of the Policies, Houston Casualty is obligated to indemnify ROAC for the entire amount of loss, including attorneys' fees and costs, incurred by ROAC in connection with the Dissenters' Claims and the Dissenters' Rights Action, subject to any applicable limits, deductibles or retentions set forth in the Policies.

54. Houston Casualty has unreasonably refused to consent to the settlement of the Dissenters' Claims and the Dissenters' Rights Action, has refused to indemnify ROAC with respect to such settlement, and has refused to indemnify ROAC with respect to the attorneys' fees and costs incurred by ROAC with respect to its defense of the Dissenters' Claims and the Dissenters' Rights Action.

55. An actual controversy of a justiciable nature presently exists between ROAC and Houston Casualty concerning the proper construction of the Policies and the rights and obligations of the parties with respect to losses incurred by ROAC in connection with the Dissenters' Claims and the Dissenters' Rights Action. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

56. WHEREFORE, ROAC requests the declaratory relief set forth below.

## COUNT II
### (For Breach of Contract)

57. ROAC repeats and incorporates by reference the allegations of paragraphs 1 through 56 above.

58. Pursuant to the terms of the Policies, Houston Casualty is obligated to indemnify ROAC for the entire amount of loss, including attorneys' fees and costs, incurred by ROAC in connection with the Dissenters' Claims and the Dissenters' Rights Action, subject to any applicable limits, deductibles or retentions set forth in the Policies.

59. Houston Casualty has breached the terms of the Policies by refusing and failing to indemnify ROAC for the entire amount of loss, including attorneys' fees and costs, incurred by ROAC in connection with the Dissenters' Claims and the Dissenters' Rights Action, subject to any applicable limits, deductibles or retentions set forth in the Policies.

60. As a direct result of Houston Casualty's breach of the Policies, ROAC has been deprived of the benefits of insurance coverage, for which it paid substantial premiums, with respect to losses incurred by ROAC in connection with the Dissenters' Claims and the Dissenters' Rights Action.

WHEREFORE, ROAC requests the relief set forth below.

## COUNT III
### (Breach of the Covenant of Good Faith and Fair Dealing)

61. ROAC repeats and incorporates by reference the allegations of paragraphs 1 thorough 60 above.

62. Implied in each of the Policies is a covenant that Houston Casualty will act in good faith and deal fairly with its insured; that it will do nothing to interfere with its insured's right to receive the benefits of the Policies; that it will not place its own interests before those of its insured; that it will exercise diligence, good faith, and fidelity in safeguarding the interests of its insured; that it will deal ethically with its insured and will fairly and adequately inform it of the nature and scope of its insurance coverage (hereinafter referred to as the "implied covenant of good faith and fair dealing").

63. Houston Casualty has breached the covenant of good faith and fair dealing implied in the Policies by, among other things:

    a. Unreasonably refusing to consent to the settlement of the Dissenters' Claims and the Dissenters' Rights Action which are covered liabilities as defined in the Policies;

    b. Refusing to indemnify ROAC for covered losses as defined in the Policies, without regard to relevant insurance policy language, relevant law, and

Case 5:13-cv-00091-cr Document 1-1 Filed 05/24/13 Page 16 of 19

the specific facts of the Dissenters' Claims and the Dissenters' Rights Action;

c. Interpreting the terms and conditions of the Policies in an unreasonable manner, which is wholly inconsistent with applicable law, solely in an effort to avoid providing ROAC with coverage to which it is entitled under the Policies;

d. Refusing to acknowledge coverage, or withdraw or alter denials of coverage, notwithstanding Houston Casualty's inability to identify supporting legal or factual authority for its coverage defenses;

e. Inventing spurious grounds for avoidance of coverage without regard to the pertinent policy language, facts, or law;; and

f. Forcing ROAC to file this litigation in order to obtain the rights and benefits to which it is entitled under the Policies.

64. ROAC is informed and believes and, therefore, alleges that Houston Casualty: is in breach of the covenant of good faith and fair dealing implied in the Policies; did the things and committed the wrongful acts alleged above for the purpose of willfully and consciously withholding from ROAC the rights and benefits to which it is entitled under its Policies and in complete disregard of said rights; and in so doing, placed its own interests above those of ROAC for the purpose of retaining and using money that should have been paid to indemnify ROAC for all loss in connection with the Dissenters' Claims and the Dissenters' Right Action.

65. WHEREFORE, ROAC requests the relief set forth below.

Case 5:13-cv-00091-cr   Document 1-1   Filed 05/24/13   Page 17 of 19

## JURY DEMAND

Pursuant to Rule 38(b) of the Vermont Rules of Civil Procedure, ROAC hereby demands a jury trial on all issues so triable.

WHEREFORE, ROAC respectfully requests that the Court enter judgment in favor of ROAC as follows:

A. On Count I, for a declaration that Houston Casualty has a duty to indemnify ROAC under the Policies for all loss that ROAC has incurred or will incur, including attorneys' fees and expenses, with respect to the Dissenters' Claims and the Dissenters' Rights Action;

B. On Counts II and III, for compensatory and general damages according to proof, special and incidental damages according to proof, and prejudgment interest at the maximum legal rate;

C. On all counts for attorneys' fees and costs of this suit; and

D. For such other and further relief as this Court deems just, equitable and proper.

Dated: April 26, 2013

ROCK OF AGES CORPORATION

By its attorneys

_[signature]_

W. Scott O'Connell (VT Bar No. 3368)
Holly J. Kilibarda, Esq. (VT Bar No. 4165)
NIXON PEABODY LLP
900 Elm Street
Manchester, N.H. 03101
(603) 628-4000
hkilibarda@nixonpeabody.com

John S. Stadler, Esq. (Motion for Admission *Pro Hac Vice* pending)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

**FORM 268**  
(VRCP Form 1)

**SUMMONS**

**STATE OF VERMONT**

SUPERIOR COURT  
Washington Unit

CIVIL DIVISION  
Docket No. 257-4-13

Rock of Ages Corporation, )
)
    Plaintiff, )
)
    v. )
)
Houston Casualty Company, )
)
    Defendant. )

## THIS SUMMONS IS DIRECTED TO Houston Casualty Company.

    1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights.

    2. **YOU MUST REPLY WITHIN 60 DAYS TO PROTECT YOUR RIGHTS.** Pursuant to V.R.C.P. 12(a)(1)(B), you must give or mail the Plaintiff **a written response** called an Answer within 60 days after April 29, 2013, the date when the request for waiver of service of this Summons and the Complaint was sent to you. You must send a copy of your Answer to the Plaintiff's attorney located at:

> **W. Scott O'Connell, Esq., Nixon Peabody LLP, 900 Elm Street, Manchester, NH 03101-2031.**
> **Holly J. Kilibarda, Esq., Nixon Peabody LLP, 900 Elm Street, Manchester, NH 03101-2031.**

You must also give or mail your Answer to the Court located at:

> **Vermont Superior Court, Washington Civil Division, 65 State Street, Montpelier, VT 05602.**

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT GIVE YOUR WRITTEN ANSWER TO THE COURT.** If you do not Answer within 60 days after April 29, 2013, the date when the request for waiver of service of this Summons and the Complaint was sent to you, and file your Answer with the Court, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint.

    5. **YOU MUST MAKE ANY CLAIMS AGAINST THE PLAINTIFF IN YOUR REPLY.** Your Answer must state any related legal claims you have against the Plaintiff. Your claims against the Plaintiff are called Counterclaims. If you do not make your Counterclaims in writing in your Answer, you may not be able to bring them up at all. Even if you have insurance and the insurance company will defend you, you must still file any Counterclaims you may have.

    6. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you cannot afford a lawyer, you should ask the court clerk for information about places where you can get free legal help. **Even if you cannot get legal help, you must still give the Court a written Answer to protect your rights or you may lose the case.**

_____  
Plaintiff's Attorney

Dated: May 8, 2013

Served on _____  
                Date

_____  
                Sheriff

**SUPERIOR COURT OF VERMONT**  **WASHINGTON UNIT**

Civil Division         (802) 828-2091
Small Claims Division  (802) 828-5551

65 State Street
Montpelier, Vermont
05602

```
| W. Scott O'Connell, Esq.       |
| 900 Elm Street, 14th Floor     |
| Manchester NH 03101            |
|                                |
```

April 26, 2013

Please be advised that Docket Number 257-4-13 Wncv has been assigned to the case of Rock of Ages Corporation vs. Houston Casualty Comp.